**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| ALBERTO R. LOPEZ, | ) | |
| #333724, | ) | |
| | ) | CIVIL ACTION NO. 9:14-484-MGL-BM |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WARDEN JOSEPH MCFADDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

      Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on February 18, 2014.[1]

      The Respondent's return and motion for summary judgment was reinstated on December 1, 2014.[2] As the Petitioner is proceeding pro se, a Roseboro order was filed on December 2, 2014, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving an extension of time, Petitioner filed a response in opposition on January 13, 2015.

      The Respondent filed a reply on January 23, 2015, following which the Petitioner

---

[1]Since there is no date stamped on the envelope, the Court has used the date of the petition. Cf. Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2]This action had previously been stayed on August 25, 2014. The stay was lifted on December 1, 2014.

1



filed a sur-reply on February 19, 2015.  This matter is now before the Court for disposition.[3]

### Procedural History

Petitioner was indicted in Aiken County in July 2006 for two (2) counts of kidnapping [Indictment Nos. 2008-GS-02-1166 & -1170], resisting arrest with a deadly weapon [Indictment No. 2008-GS-02-1167], possession of a firearm or knife during the commission of or attempt to commit a violent crime [Indictment No. 2008-GS-02-1168], and assault and battery with intent to kill ("ABWIK")[Indictment No. 2008-GS-02-1169], all stemming from one event on or about May 2, 2006.  (R.pp. 98-108).   Petitioner was represented by Everett K. Chandler, Esquire, and on March 12, 2009, pled guilty to all charges.  (R.pp. 1-32).  The plea judge sentenced Petitioner to thirty (30) years confinement on each kidnapping conviction, concurrent; five (5) years, concurrent, for possession of the weapon, twenty (20) years, concurrent, for ABWIK, and ten (10) years for resisting arrest with a deadly weapon, consecutive to the kidnapping [Indictment No. 2008-GS-02-1166] sentence.  (R.p. 31).  Petitioner filed a motion to reconsider and reduce the sentence on March 23, 2009, which was denied by a revised order filed February 22, 2010.  See Court Docket No. 25-6. Petitioner did not appeal his convictions and/or sentences.

On April 22, 2010, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court; Lopez v. State of South Carolina, No. 2010-CP-02-917; asserting ineffective assistance of plea counsel on several grounds.  However, he ultimately waived all grounds except that counsel was ineffective for not having a translator present at his meetings with Petitioner, as

---

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C.  The Respondent has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Petitioner is a native Spanish speaker. (R.pp. 42-49, 68, 95). Petitioner was represented in his APCR by Paige Tiffany, Esquire, and an evidentiary hearing was held on Petitioner's application on July 12, 2011. (R.pp. 56-89). In an order dated August 2, 2011 (filed August 31, 2011), the PCR judge denied relief on the APCR in its entirety. (R.pp. 90-97).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Wanda H. Carter of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who raised the following issue:

> Trial counsel erred in failing to secure the presence of an interpreter present during his consultations with petitioner, who speaks Spanish, in preparation of a defense in the case because their meetings could not have been productive or meaningful sans the aid of an interpreter.

See Petition, p. 2 (Court Docket No. 25-2, p. 3).

On November 7, 2013, the South Carolina Supreme Court denied Petitioner's writ of certiorari. See Court Docket No. 25-4. The Remittitur was sent down on December 3, 2013. See Court Docket No. 25-5.

After Petitioner filed this federal habeas action, he filed a second PCR in state court on June 16, 2014, which was dismissed by the state court in an order dated November 7, 2014 (filed on November 20, 2014), as successive, time barred, subject to *res judicata*, and failure to state a cognizable claim. See Court Docket Nos. 32-2, 32-4.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issue[4]:

---

[4]Petitioner originally raised three other grounds, which he withdrew, abandoned, and waived in his response in opposition to summary judgment. See Memorandum in Opposition to Summary Judgment filed on January 13, 2015, p. 23.

3



**Ground One:** Ineffective assistance of counsel.

**Supporting Facts:** One of the most important role of an attorney is to provide some structure in a plea that a person to fully understand the nature of the plea. Not understanding to what is depriving me the fundamental fair plea. This posed a pervasive and unreasonable risk of constitutional rights.

See Petition, p. 6.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; see Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.[5]

In Ground One his Petition, Petitioner argues that his plea counsel was ineffective when he failed to have an interpreter present during his consultations with the Petitioner, who speaks Spanish, thereby making his guilty plea not knowing and voluntary due to his lack of understanding.

_____

[5]In his response in opposition to summary judgment, Petitioner also appears to be attempting to raise a new issue regarding the interpreter having an alleged conflict of interest at his guilty plea. That issue is discussed separately in Section II, infra.

4



Petitioner raised this issue in his APCR, where he had the burden of proving the allegations in his petition, as well as on appeal to the State Supreme Court. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); see also Court Docket Nos. 25-1, pp. 35-50; 25-2, p. 3. The PCR court rejected this claim, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Lopez v. State of South Carolina, No. 2010-CP-02-917.

Specifically, the PCR judge found that: 1) Petitioner waived all other allegations set forth in his APCR and pursued only the claim that his counsel was ineffective for failing to have an interpreter present at his meetings with Petitioner; 2) Petitioner testified that he was born in Mexico, but moved to the United States when he was fifteen, roughly twelve years before the hearing; 3) Petitioner stated that at the time of his arrest he spoke very little English; 4) Petitioner testified that he met with counsel four or five times leading up to the plea hearing, but that counsel only brought an interpreter to their first meeting; 5) Petitioner testified that during those meetings, he did not recall whether counsel advised him of his constitutional rights; 6) Petitioner went on to say that, based on his discussions with counsel, he knew he was facing up to ninety years in jail, but thought he would get either deported to Mexico or a ten year jail sentence; 7) Petitioner testified that although the entire plea hearing was translated in Spanish to him, he did not understand the concepts relayed to him; 8) however, because he thought he was receiving a ten year sentence, he did not ask any questions or tell anyone he didn't understand the plea; 9) Louis Navarro, the certified court interpreter both at the PCR hearing and at Petitioner's plea hearing, was called to testify at the PCR hearing by Petitioner; 10) Navarro started by explaining his duties as a court interpreter; 11) Navarro went on to say that he did not meet with Petitioner prior to the plea hearing, and that at no point during the plea did



Petitioner bring to his attention that he couldn't understand something that was said by either attorney or the Judge; 12) trial counsel testified that he did not see any need for an interpreter after his meetings with Petitioner; 13) counsel stated that during his initial two or more meetings with Petitioner, he brought along his office assistant who was fluent in Spanish to translate; 14) that after counsel's assistant left her position with counsel's firm, counsel met with Petitioner without a translator present; 15) counsel had no doubt that Petitioner spoke and understood English very well, and that Petitioner was able to fully understand their conversations about the pending charges based on Petitioner's responses to their conversations; 16) Petitioner called counsel's office several times during which he spoke fluent English to his office staff as well; 17) counsel also testified Petitioner was part of a discussion with several English speaking people in which he discussed potential restitution payments for the crimes as part of his sentence; 18) counsel recalled that he spoke with Petitioner about his constitutional rights, the charges, and all potential sentences he was facing including deportation, all of which he was sure Petitioner fully understood; 19) counsel felt no need for an interpreter to be present at the plea hearing, but the State requested that Mr. Navarro be present to interpret simply out of an abundance of caution; 20) counsel testified that it was ultimately Petitioner's decision to enter the plea; 21) counsel's testimony was credible and persuasive on the issue of whether Petitioner actually understood the conversations and concepts that he discussed with counsel during the course of counsel's representations; 22) Petitioner's testimony was not credible; 23) counsel advised Petitioner of all relevant issues regarding the charges he was facing, including his constitutional rights, the facts giving rise to the charges and the potential sentences he was facing including deportation, and the Petitioner understood those discussions; 24) counsel gave Petitioner all the information and advice necessary to make an intelligent and voluntary decision on whether to



enter his plea, and based on counsel's testimony, at no point did counsel have reason to suspect

Petitioner did not understand; 25) Petitioner did not prove by a preponderance of the evidence that

counsel was ineffective for failing to provide a Spanish interpreter during their meetings; 26)

Petitioner's guilty plea was entered knowingly and voluntarily after being fully and adequately

advised by competent counsel acting within the range of competence demanded of attorneys in

criminal cases; 27) Petitioner failed to carry his burden; 28) Petitioner failed to raise any of the

additional allegations in his application at the hearing and thereby waived them; 29) Petitioner's

failure to address these issues at the hearing indicated a voluntary and intentional relinquishment of

his right to do so; and 30) any and all remaining allegations were denied and dismissed.  (R.pp. 94-

96).  As noted, the South Carolina Supreme Court denied Petitioner's petition raising this same issue

on appeal.  See Court Docket No.  25-4.

        Substantial deference is to be given to the state court's findings of fact.  Evans v.

Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord

state court factual findings a presumption of correctness that can be rebutted only by clear and

convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir.

2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court, a determination of a factual issue
> made by a State court shall be presumed correct.  The applicant shall have the burden
> of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531

U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

        However, although the state court findings as to historical facts are presumed correct



under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, with regard to the ineffective assistance of counsel claim that was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner



must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Here, after careful review of the record and the arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under the standard of Strickland and Hill. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. In addition, Petitioner has also failed to show that his guilty plea was not voluntarily and knowingly entered.

At Petitioner's guilty plea, where Petitioner had the services of an interpreter (Mr. Navarro), the Court explained the charges and the maximum penalty or punishment on each charge Petitioner was facing. (R.pp. 7). Petitioner then responded "guilty" when the Court inquired if, understanding the nature of the charges against him and the possible penalties associated with those charges, Petitioner wanted to plead guilty or not guilty. (R.p. 12). Further, at his guilty plea counsel stated in open Court that he had advised Petitioner of the charges, of his constitutional right to a trial, and had reviewed the strike rule with Petitioner based on Petitioner's specific charges. (R.p. 12). The Court also specifically instructed the Petitioner that he was going over his constitutional rights and that if he had any questions at any time, or if he needed additional time to consult with counsel at any time, to let the Court know and he would stop and give the Petitioner that opportunity. (R.p. 14). Petitioner agreed to do so. (R.p. 14). The Court then explained the ramifications of the violent and serious charges which Petitioner was facing, Petitioner's right to a jury trial, the State's burden of

proof in a jury trial, Petitioner's right to call witnesses and his confrontation rights, his right to choose whether to testify or not on his own behalf at trial, and how the court would instruct the jury that they could not consider his decision to not testify if he wished not to do so. (R.pp. 14-17). The Court then told Petitioner that he would be waiving or giving up these rights if he proceeded with his guilty plea. (R.p. 15). The Court later went over the state's burden of proof again and that it would take all 12 members of the jury to agree that Petitioner was guilty of the charges or he could not be found guilty. (R.p. 18). Finally, the Court also explained Petitioner's appellate rights if he proceeded to a jury trial and his rights to appeal his guilty plea. (R.pp. 18-19).

Petitioner then testified that he wanted to go forward with his guilty plea, to give up his rights or waive them, and that he understood that he was giving up or waiving his rights and that he still wanted to proceed with his plea. (R.p. 19). Petitioner also testified that no one had promised him anything or held out any hope of reward or threatened him in any way to get him to plead to the charges, that he was satisfied with his attorney's services, that he had communicated with his counsel about potential witnesses or information that could help him mount a defense, and that his counsel had done everything on his behalf that Petitioner asked him to do or that Petitioner felt like he should have done. (R.pp. 19-21). Petitioner then confirmed that he understood the questions that the Court had asked him during the plea and that his answers had been truthful, that he was pleading guilty of his own free will, and that he was guilty of the charges that he was pleading to at the hearing. (R.pp. 21-22). The solicitor then recited the facts surrounding the charges and Petitioner confirmed that those facts were essentially correct. (R.pp. 23-26).

At his PCR hearing, Petitioner testified that he came to the United States approximately ten years before his guilty plea was entered, that he learned a little English while he



was working in the United States and while he was in jail, and that he was in jail approximately three years prior to his guilty plea being entered. (R.pp. 1, 61). Petitioner testified that he met with his trial counsel approximately four to five times, that trial counsel only brought an interpreter to the first meeting, and that he could understand very little in those meetings when the interpreter was not present. (R.pp. 61-62). Petitioner also testified that he did not remember if counsel explained his constitutional rights to him and that it was his understanding that if he declared himself guilty he would probably go free and get deported or possibly face a maximum of ten years sentence. (R.p. 62). Petitioner testified that Mr. Navarro was present when he was brought into court for his guilty plea, but that Mr. Navarro just interpreted what was being said, and that Petitioner did not really understand what things meant. (R.pp. 62-65). Although Petitioner admitted that he told the plea judge that no one ever promised him anything to make him plead, Petitioner testified that was because prior to entering the courtroom, his counsel told him that he was to answer yes and no when they told him, and that when asked if he was pleading guilty, to answer yes. (R.p. 65). Petitioner testified that he knew that he was facing ninety-five years, but that counsel told him that he was going to try to get him a better deal or get him deported. (R.pp. 65-66). Petitioner conceded that the plea judge explained to him the amount of time that he was facing, but testified that he never thought that he would give him that many years. (R.p. 66). Petitioner testified that he understood everything that was being translated to him at his plea hearing, but there were concepts and things being said to him that he had never heard in his life. (R.p. 67). Petitioner also testified that he didn't ask any questions because he already had the expectation that he was going to be deported or sentenced to ten years. (R.p. 68).

Mr. Navarro testified at Petitioner's PCR hearing that he is a federal and state certified



court interpreter and translator and a medical interpreter and translator as well. (R.p. 69). Navarro testified that he did not meet Petitioner until his plea hearing. (R.p. 72). Petitioner's trial counsel testified at the PCR hearing that he had an employee who was fluent in Spanish and that they met with Petitioner on more than one occasion, and that both with and without this interpreter at different times, he went over Petitioner's constitutional rights, the indictments, and the charges he was facing. (R.pp. 77-78). Counsel testified that after the employee who could interpret left his employment, Petitioner called his office and asked counsel to come and speak with him. (R.p. 78). Counsel testified that he was surprised at the ease with which Petitioner could communicate with his staff, that Petitioner's English was actually very good, and that counsel even joked with Petitioner that Petitioner's English was better than his English. (R.pp. 78, 86). When asked if he had any problem communicating with Petitioner when speaking English, counsel testified "[a]bsolutely not. Without any question. There was no question in my mind that, that my client, Mr. Lopez, knew everything that we were discussing." (R.p. 78). In addition, counsel testified that there was specific information that he needed from the Petitioner regarding restitution issues and that Petitioner not only communicated clearly with counsel regarding those issues, but also with another individual about those same issues who only spoke English. (R.pp. 78-79). Counsel opined that Petitioner had a good understanding of the consequences he facing with his charges, that they discussed this issue at length, and talked about his defense at length. (R.p. 79). Counsel testified that Petitioner thought that the victim would not be around because he was from the Hispanic community and was transient, and that when Counsel let him know that the victim was around, Petitioner was kind of shocked. (R.p. 79). They also discussed that a new solicitor was assigned to the case and pulled all the deals that the previous solicitor had been discussing as possibilities. (R.p. 79).



Counsel testified that he had the opportunity to discuss Petitioner's constitutional rights with him in more detail, to explain them to him in more than just words, and what the meanings of his constitutional rights were and that he did that with the interpreter. (R.pp. 79-80). Counsel testified that as they proceeded, it was fairly easy to be able to let Petitioner know about his right to a trial by a jury, what he planned on proving, what they had alleged, who the actual victims in the case were, the officers who would testify, and what the officers would say. (R.pp. 80, 85). Counsel testified that Petitioner was fully apprised of the entire process as well as his rights as they related to the entire process of a trial and what it actually meant, ultimately, to proceed and plead guilty. (R.p. 80). Counsel testified that the solicitor, out of an abundance of caution, asked for the interpreter to be present at the guilty plea, but that counsel never had any problem communicating with Petitioner after he realized how good Petitioner's English was. (R.pp. 80, 83). Counsel testified that he never promised Petitioner any certain sentence, although he had earlier talked with him about something the first solicitor assigned to the case was considering. (R.pp. 80-81). Counsel testified that although it was not an official offer, the first solicitor assigned to the case was considering allowing the Petitioner to make restitution to the victim in the amount of $10,000 or $15,000 for medical issues in exchange for the possibility of him doing ten years and then being deported. (R.p. 81). However, as soon as that solicitor retired, the new solicitor assigned had a different philosophy and the discussions of a possible ten year sentence broke down. (R.pp. 81-82). Counsel also testified that he discussed deportation with the Petitioner, explaining that if he didn't get a life sentence, that he would be deported after he served his sentence. (R.pp. 81-82). Counsel testified that he reviewed with the Petitioner prior to his guilty plea what questions he would be asked, that he did not advise Petitioner to answer in any particular way, and only told him as he tells every client to answer



13

truthfully. (R.p. 82). Counsel testified that he has Spanish speaking clients all the time and that some need interpreters and some don't, and that Petitioner did not need an interpreter and that he was confident in his ability to communicate with Petitioner. (R.pp. 87-88).

The PCR court found Petitioner's counsel credible and that Petitioner was not credible. The PCR court's findings are entitled to substantial deference on habeas corpus review, and while a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings (assuming that were to be the case). Further, given the deference due the state court's finding on this credibility issue, Petitioner has not shown that the state court's finding was unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."]; Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."].

The PCR court found that counsel's testimony was credible and persuasive on the issue of whether Petitioner actually understood the conversations and concepts that he discussed with counsel during the course of counsel's representations, and that Petitioner's testimony was not

14



credible. Although Petitioner complains that the PCR court did not credit Mr. Navarro's testimony regarding his ability to understand, the undersigned does not find any error based on that allegation. While Mr. Navarro offered an opinion regarding Petitioner's alleged inability to understand his constitutional rights and his ability to waive them[6], Mr. Navarro conceded that he did not talk to Petitioner prior to the plea and that as a result, he was not able to make an assessment at that point as to Petitioner's ability to speak English. (R.pp. 72, 74-76). Mr. Navarro also testified that he didn't know whether Petitioner understood the things that were said to him in court or not; (R.p. 75); while Petitioner's counsel testified that he had communicated with Petitioner at great length and that Petitioner had the ability to understand and communicate in English. See discussion, supra and infra. The PCR court also found that counsel advised Petitioner of all relevant issues regarding the charges he was facing, including his constitutional rights, the facts giving rise to the charges and the potential sentences he was facing including deportation, and that Petitioner understood those discussions. Additionally, the PCR court held that counsel gave Petitioner all the information and advice necessary to make an intelligent and voluntary decision on whether to enter his plea, and that based on counsel's testimony, at no point did counsel have reason to suspect Petitioner did not understand.

The PCR court concluded based on the testimony and evidence that Petitioner did not prove by a preponderance of the evidence that counsel was ineffective for failing to provide a Spanish

---

[6]This opinion was based on the fact that Navarro had not conversed with the Petitioner prior to the guilty plea hearing. However, the Court went over these rights with Petitioner at the plea hearing, and Petitioner stated that he understood those rights. (R.pp. 14-24). Further, although Petitioner has submitted an affidavit in opposition to summary judgment wherein he discusses having met with Navarro prior to his PCR hearing, even assuming arguendo that this Court could consider Petitioner's statements in his Affidavit regarding his meetings with Navarro, which allegations were not set forth in his testimony at the PCR hearing, that would not be a basis to overturn his guilty plea where the record contains counsel's testimony regarding the issue based upon his ability to communicate with Petitioner during the relevant time period at issue.



interpreter during their meetings, and that Petitioner's guilty plea was entered knowingly and voluntarily after being fully and adequately advised by competent counsel. There is nothing reversible in these findings based on the record of this case; <u>Evans</u>, 220 F.3d at 312; and Petitioner has therefore failed to meet his burden of proving trial counsel failed to render reasonably effective assistance. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; <u>see also</u> <u>Wade v. State</u>, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; <u>Hill</u>, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial].

Additionally, it is clear in the record that the plea court also went over the facts of the case and Petitioner's rights prior to the acceptance of the plea, where Petitioner had the assistance of an interpreter, following which Petitioner admitted he had committed the crime and entered his plea of guilty. Cf. <u>Pittman v. South Carolina</u>, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing <u>State v. Ray</u>, 427 S.E.2d 171, 174 (S.C. 1993)); <u>see also</u> <u>State v. Lambert</u>, 225 S.E.2d 340 (1976)); <u>Roddy v. South Carolina</u>, 528 S.E.2d 418, 421 (S.C. 2000). See <u>Sargent v. Waters</u>, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the



statute."](quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 431-432 (1983)).  Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court.  <u>Cf</u>. <u>United States v. Barrios-Lopez</u>, 320 Fed.Appx. 464, 466, (7th Cir. 2009)[rejecting allegation "that [Petitioner's] limited English proficiency prevented him from making a plea that was knowing and voluntary" where it was "inconsistent with assurances given to the judge, under oath, . . .through an interpreter, that he fully understood the plea and its terms.  The judge asked him specific questions; his responses reflected knowledge.  Any argument that the plea was not voluntary would be frivolous."]; <u>United States v. Manzo-Aparicio</u>, 420 Fed.Appx. 225, 226-227 (4th Cir. 2011).

Petitioner has failed to show he suffered any prejudice due to counsel's failure to have an interpreter present during any pretrial meetings with the Petitioner.  <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus.].  Therefore, Petitioner has not shown that he is entitled to relief on this claim, and it should be dismissed.

## II.

Petitioner also is apparently attempting to raise an issue of whether the interpreter had a conflict of interest during his plea hearing.  Even though Petitioner's counsel did not believe that an interpreter was needed, the record shows that the Solicitor requested Mr. Navarro to be present out of an abundance of caution.  (R.pp. 3-11, 80, 83).  There is no evidence in the record that Mr. Navarro did anything other than translate at the plea hearing, and there are no allegations of any improper translations.  Nonetheless, Petitioner complains that because Mr. Navarro was employed by the Solicitor's office, he did not have the benefit of someone to advise him as to what different



concepts of law meant.  However, as previously discussed, that testimony is contradicted by the testimony of Petitioner's counsel that he had himself explained these rights to the Petitioner, as well as by the plea Court's own colloquy with Petitioner.  Hence, no conflict warranting a reversal of Petitioner's conviction has been presented.

   In any event, it is also readily apparent that this issue was not previously properly raised and exhausted by Petitioner in his state court proceedings.  While the testimony at his PCR hearing touched on the issue that the interpreter did not advise him of his constitutional rights because of his position with the Solicitor's office, that testimony was given in the context of whether Petitioner's counsel should have had an interpreter during meetings prior to the plea hearing to explain these rights, not as a separate claim for relief.  Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert, denied, 528 U.S. 959 (1999)"In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court.... That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.] (quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir.1995) (quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)).  Further, even assuming arguendo that Petitioner *was* trying to raise this issue in some form, it was not addressed by the PCR court's order, nor did Petitioner raise this issue in his PCR appeal.  Accordingly, this issue was not properly preserved for review by this Court in Petitioner's PCR proceedings.  See White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[issue procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter

18



or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Since Petitioner did not properly pursue this claim in his post conviction relief proceedings, it is barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not



fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because as discussed hereinabove this issue was not *properly* pursued and exhausted by the Petitioner in the state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Petitioner has failed to show cause for his procedural default on this issue. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]. Nor does the undersigned find that Petitioner has met his burden of showing actual innocence, or that a fundamental miscarriage of justice will occur if this claim is not considered. see, Wainwright v. Sykes, supra; Murray, 477 U.S. at 496; Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496)); Sawyer

20



v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995)).

To prevail under an "actual innocence" theory, Petitioner must produce new evidence that was not

available at trial to show his factual innocence. Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999).

Further, Petitioner must "demonstrate actual factual innocence of the offense or conviction; i.e., that

petitioner did not commit the crime of which he was convicted." United States v. Mikalajunas, 186

F.3d 490, 494 (4th Cir. 1999). Petitioner has introduced no evidence that was not available at the time

of his trial to establish his factual innocence.

       Accordingly, to the extent Petitioner is attempting to raise this as a separate issue,

it is procedurally barred from consideration by this Court, and must be dismissed. See 28 U.S.C. §

2254.

## Conclusion

       Based on the foregoing, it is recommended that the Respondent's motion for summary

judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

       The parties are referred to the Notice Page attached hereto.

_____
  Bristow Marchant
  United States Magistrate Judge

March 19, 2015
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

